## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1.   BRADLEY ICE, and<br>2.   CYNTHIA ICE, husband and wife, individually and on behalf of all other persons similarly situated,<br><br>            Plaintiffs,<br><br>vs.<br><br>3.   BANK OF AMERICA, N.A.<br><br>            Defendant. | <br><br><br><br><br><br>Case No.  CIV-20-537-HE |

## CLASS ACTION COMPLAINT

Plaintiffs Bradley Ice and Cynthia Ice, husband and wife, hereinafter referred to individually as "Bradley" or "Cynthia," or collectively as the "Plaintiffs," bring this class action against Bank of America, N.A. ("BOA") for improperly requiring and overcharging for force-placed flood insurance.

## INTRODUCTION

1. Plaintiffs and class members currently have or formerly had home loans or lines of credit with BOA, secured by their residential property.

2. BOA unlawfully engaged in a pattern and practice of forcing Plaintiffs and class members to purchase and/or maintain flood insurance in excess of the amounts required by federal law, in amounts greater than BOA's secured interest in the property, and contrary to the amounts agreed upon in the relevant loan and mortgage documents.

3. BOA force-places flood insurance by sending form letters claiming that borrowers do not have adequate flood insurance without regard to whether adequate coverage is in place or whether flood insurance is even required for the properties. Even when borrowers send in proof of adequate flood insurance coverage or the fact that they are not required to obtain it, BOA disregards such information and force-places high premium flood insurance policies and engages in a pattern and practice of mailing a barrage of harassing letters and placing repeated harassing telephone calls. Throughout this process, BOA misrepresents that its requirement that borrowers obtain additional flood insurance at the borrower's expense is required by federal laws for property owners in "Special Flood Hazard Areas" ("SFHAs").

4. BOA forces borrowers to pay for insurance policies through BOA's affiliated companies at excessive prices, and gave or accepted unlawful kickbacks, referral fees, commissions, or other compensation on the transactions, thereby realizing improper financial gains.

5. Once BOA forces a borrower into one of its affiliates' excessively priced insurance policies, it ensures payment of the premium by paying it and then withdrawing the amount from the mortgagor's escrow account or adding it to the borrower's loan balance.

6. Other than garnering improper financial benefit, there is no reasonable or good faith explanation for BOA demanding that Plaintiffs and class members secure flood

insurance on their properties over and above BOA's security interest in the properties or when it is not actually required.

7. BOA forced Plaintiffs and class members to pay for insurance without adequately and clearly disclosing the terms of such requirements and without complying with disclosure and consent requirements under federal law.

8. BOA's actions violate the Truth in Lending Act, 12 U.S.C. § 1601, et seq. ("TILA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et seq. ("RESPA").

9. BOA's actions constitute a breach of the mortgage/loan contract between the borrowers and BOA and a breach of the implied covenant of good faith and fair dealing. BOA's actions also constitute unjust enrichment, conversion, are unconscionable and violate state laws.

10. Plaintiffs seek monetary, injunctive and declaratory relief, penalties and attorneys' fees and costs on behalf of themselves and all class members.

11. This is not the first time BOA has engaged in this behavior. See, e.g. Hall et. Al. V. Bank of America, N.A. et al., S.D. Fla., Case No. 12-CV-2270 which settled for $228 million in April 2014. See "Bank of America, QBE settle insurance lawsuit for $228 million," Reuters Business News, Dena Aubin, April 7, 2014. The Settlement Agreement from Hall is attached as Exhibit 1.

## PARTIES

12. Plaintiffs Bradley and Cynthia Ice are married residents of Kingfisher County, Oklahoma.

13. Bank of America, N.A. ("BOA") is a national bank association headquartered in Charlotte, North Carolina. BOA does business in Oklahoma and throughout the United States, including in this District.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over Plaintiffs' and Class Members federal law claims pursuant to 28 U.S.C. §1332(d). The proposed class includes members from a large number of states and more than $5 million is at issue.

15. The Court has supplemental jurisdiction over Plaintiffs' and Class Members' state law claims pursuant to 28 U.S.C. §1367.

16. Venue is properly laid in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because BOA resides in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## BACKGROUND

### The National Flood Insurance Program and  Regulations

17. The purpose of the federal National Flood Insurance Program ("NFIP") is to reduce the federal government's burden to provide disaster relief to flood prone areas by

4

providing a federal flood insurance scheme. Payments for flood losses under the NFIP are the exclusive source of such insurance payments, and federal agencies tasked with implementing the NFIP, including the Federal Emergency Management Agency ("FEMA"), prescribe minimum and maximum limits on how much flood insurance a homeowner can have and how much the insurance policy will pay in the event of a loss.

18. In the 1994 Amendments to the National Flood Insurance Act of 1968, 42 U.S.C. § 4001, et seq. ("NFIA"), Congress required lenders to ensure that homeowners had flood insurance for property located in areas designated as Special Flood Hazard Areas ("SFHAs") by FEMA. Lenders are required to ensure that properties in such areas pledged as security for loans have flood insurance equal to the lesser of: (1) the maximum insurance coverage available through the NFIP, which is $250,000; (2) the outstanding balance of the loan; or (3) the replacement cost of the property.

19. Requiring the borrower to carry flood insurance coverage in an amount that exceeds the lesser of the loan balance and replacement value of the collateral creates an "excess insurance" situation in which more insurance is required by the lender than is necessary to protect the lender's interest in the collateral.

**BOA Has Force-Placed Plaintiffs and Class Members into
Unnecessary and Inflated Flood Insurance**

20. In June of 2011, Plaintiffs obtained a mortgage loan in the amount of $107,000 from BOA on a residential property in Kingfisher, Oklahoma.

21. At the time, Plaintiffs were not required to maintain flood insurance as a condition of the mortgage because their residential property was not located in a SFHA.

22. On June 25, 2019, BOA sent Plaintiffs a letter asserting that Plaintiffs' property was located in a SFHA, and Plaintiffs were required to obtain and maintain flood insurance. See BOA June 25, 2019 Letter, Exhibit 2.

23. Plaintiffs disputed this requirement and had numerous conversations with representatives from BOA to determine whether Plaintiffs' property was in fact in a SFHA. Plaintiffs were told by BOA representatives that FEMA had updated its flood maps to reflect that Plaintiffs' property was now located in a SFHA. Plaintiffs were also told that they must secure flood insurance within 60 days, which put their deadline at August 24, 2019.

24. On June 27, 2019, just two days after the first letter from BOA, BOA sent Plaintiffs a second letter asserting that they must secure insurance with a coverage amount of $70,800 within 45 days, which meant that their deadline to secure flood insurance had moved up to August 11, nearly two weeks earlier than Plaintiffs had been told on the phone by BOA's representatives. See BOA June 27, 2019 letter, Exhibit 3. The letter indicated that the "premium amount" for this amount of coverage would be $722.16 for the period from August 12, 2019 – August 12, 2020.

6

25. On June 28, 2019, Plaintiffs filled out a letter of map amendment (LOMA) form on FEMA's website to have their property removed from the flood zone, which FEMA approved. See LOMA, Exhibit 4.

26. On July 5, 2019 BOA sent Plaintiffs a third letter refusing to remove the flood insurance requirement from their mortgage. BOA sent this same letter to Plaintiffs again on July 15, 2019. See BOA July 5, 2019 letter, Exhibit 5, and BOA July 15 letter, Exhibit 6.

27. In a phone conversation with Plaintiffs on July 8, 2019, "Tony" from BOA alleged that FEMA updated the flood maps on July 5, 2019 so that they now showed Plaintiffs' residence within a SFHA.

28. On July 11, 2019 Plaintiffs sent a letter of dispute to BOA which included a FEMA map showing that Plaintiffs' property was not in a SFHA and a copy of Plaintiffs' deed. See Plaintiff's July 11, 2019 letter and attachments, Exhibit 7.

29. On July 15, 2019 BOA sent Plaintiffs a fourth communication which included an aerial photograph of Plaintiffs' property with a "map date" of June 7, 2019. See aerial photograph, Exhibit 8. The aerial photograph showed two outbuildings, east of and away from Plaintiffs' residence, which outbuildings were closer to a creek than the residence. The photograph, which Plaintiffs were told was provided by CoreLogic, also contained the warning by CoreLogic that the "flood map exhibit should not be relied upon by any

third parties. It is not intended to satisfy any regulatory guidelines and should not be used for this or any other purposes."

30. On July 19, 2019, BOA sent Plaintiffs a fifth letter demanding that Plaintiffs send proof of flood insurance to BOA within 22 days. The new deadline in this fifth communication from BOA was August 10, a day earlier than specified in BOA's June 27 letter. See BOA July 19, 2019 letter, Exhibit 9.

31. Also, on July 19, 2019 Plaintiffs contacted the Better Business Bureau to complain about BOA's harassment regarding flood insurance.

32. On July 30, 2019 Plaintiffs talked to a representative of State Farm who stated that Plaintiffs' residence is not in a flood zone but is rather in a "Zone X," which does not require flood insurance. State Farm personnel suggested that Plaintiffs ask BOA for a "flood determination certificate." On that same day, Plaintiffs obtained flood insurance from State Farm on their home for an annual premium of $339. See State Farm Invoice, Exhibit 10.

33. On August 7, 2019 FEMA wrote to Plaintiffs following Plaintiffs' request for a LOMA regarding providing an "elevation certificate." See Exhibit 11.

34. On August 10, 2019, Plaintiff's sent BOA proof that they had obtained flood insurance. Despite this proof, BOA created an escrow account for Plaintiffs on August 12, 2019 to pay for force-placed flood insurance with BOA's affiliate.

35. On August 13, 2019 BOA wrote to Plaintiffs following up on Plaintiffs' complaint to the Better Business Bureau. The response included more than 50 pages of documents. Included with the documents was a "map exhibit dated June 7, 2019." The map is included as Exhibit 12. BOA's own exhibit appears to show Plaintiffs' residence is outside of the "A Zones." Further, the map again included the following disclaimer:

> This flood map exhibit was produced using multiple public and proprietary sources. It is provided for our client for the sole purpose of illustrating the flood determination by showing the Special Flood Hazard Area relative to the subject property. This flood map exhibit should not be relied upon by any third parties. It is not intended to satisfy any regulatory guidelines and should not be used for this or any other purpose.

36. By August 15, 2019 Plaintiffs had secured an elevation certificate for a cost of $650 from a third-party land surveyor documenting that their residence was not in a high-risk flood zone. Rather, Plaintiffs' residence is in a Zone X. See Elevation Certificate, Exhibit 13. See also Definitions of FEMA Flood Zone Designations, Exhibit 14. X Zones are moderate to low flood risk areas where flood insurance can be purchased but is not mandatory. Plaintiff provided the elevation certificate to BOA the next day.

37. On August 27, 2019, Plaintiffs sent the approved LOMA to BOA to show that FEMA recognized that Plaintiffs' home was not in a SFHA. See August 27, 2019 LOMA Transmission, Exhibit 15.

9

38. On September 5, 2019, BOA sent Plaintiffs another letter changing BOA's opinion on whether flood insurance was required for Plaintiffs' property. BOA informed Plaintiffs that they were no longer required to maintain flood insurance on their property. See BOA Sept. 5, 2019 Letter, Exhibit 16. While "part of your property is located in a…FEMA…SFHA…the structure(s) are exempt from the flood insurance requirement."

39. On October 7, 2019, Plaintiffs received a letter from FEMA stating that their flood insurance had been cancelled because they were not required to maintain flood insurance on their home. See FEMA Oct. 7 Letter, Exhibit 17.

40. On October 24, 2019 the process stared over with BOA's eighth letter to Plaintiffs. BOA reversed or ignored its prior finding that flood insurance was not required. BOA again alleged that Plaintiffs were required to send proof of flood insurance to BOA within 45 days. The new deadline was thus December 8, 2019. See BOA Oct. 24, 2019 Letter, Exhibit 18.

41. BOA sent their ninth letter to Plaintiffs on November 15, 2019 warning Plaintiffs that they had 22 days from the date of letter to buy coverage. The deadline had again been moved up one day to December 7, 2019. See BOA Nov. 15, 2019 letter, Exhibit 19.

42. On November 22, 2019, Plaintiffs sent the approved LOMA to BOA which had previously been sent on August 27. See November 22, 2019 Letter, Exhibit 20.

43. On information and belief, BOA has made identical or similar misrepresentations and unreasonable demands with accompanying barrages of letters and ignoring evidence and even its own prior findings to thousands of other persons who are similarly situated to Plaintiffs, in order to justify force placing them into excessive, high-premium flood insurance policies for their properties.

## BOA's Unlawful Practices

44. BOA ties insurance products in with its mortgage loan and home equity financing activities.

45. BOA enforces this tie in an arbitrary fashion without regard to whether Plaintiffs and the class need flood insurance at all or in the amounts dictated by BOA.

46. BOA makes its decision to force-place flood insurance together with its insurance affiliates. BOA then requires borrowers to purchase flood insurance in excess of what is necessary to meet the requirements of federal law or to protect its interest as a mortgagee and continues to insist on forcing payment for insurance that is unnecessary and overpriced.

47. BOA's affiliates charge excessively high insurance premiums above what an independent insurance company would charge, in Plaintiffs' case almost exactly double what State Farm charged for the same coverage, even though those insurance policies are,

as described in BOA's letters to Plaintiffs, limited compared with independently written insurance policies.

48. BOA sends out generic notices to borrowers, including Plaintiffs, stating that the borrower must obtain insurance coverage in amounts dictated by BOA. The amount of coverage that BOA dictates and requires of borrowers exceeds that required by federal law, as discussed throughout this Complaint. It exceeds what is necessary to protect BOA's interest in the collateral pledged as security.

49. BOA relies on information it is expressly told <u>not</u> to rely on. BOA's actions are taken based on unreliable records that were never intended to be used for the purposes BOA uses them.

50. BOA imposes coverage requirements beyond that required by law as necessary to protect its insurable interest in the property. BOA can readily extract monies from Plaintiffs and the class because of the threats of negative credit ratings and foreclosure. Moreover, BOA has the power and exercises that power in bad faith to simply extract whatever amounts it deems necessary from Plaintiffs' and the class members' escrow accounts.

51. BOA has engaged in the above practices in order to realize unfair financial gains from class members, including Plaintiffs. By adding the cost of force-placed

insurance to borrowers' loan balances, BOA earns additional interest on the amounts charged, and cause borrowers to incur additional costs and fees.

52. By purchasing force-placed insurance from its other insurance affiliates, BOA also earned commissions for its other insurance affiliates, and ultimately realized the entire profit on the transaction.

53. On information and belief, discovery will reveal other direct and indirect financial benefits and incentives that accrue to BOAs as a result of their unfair, unlawful and unconscionable conduct as set forth herein.

## CLASS ACTION ALLEGATIONS

54. Plaintiffs bring this action individually and on behalf of all others similarly situated and ask the Court to certify this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

55. This action satisfies the Rule 23 requirements of numerosity, commonality, typicality, adequacy, and, where applicable, predominance and superiority.

56. Plaintiffs assert these claims on behalf of a proposed nationwide class defined as:

> All persons with loans financed or serviced by BOA who, within the applicable statute of limitations, were charged for a force-placed insurance policy procured pursuant to BOA's demands.

57. The class is composed of thousands of mortgage borrowers whose home financing was originated and/or serviced by BOA. The disposition of the claims of the proposed Class members through this class action will benefit the parties and the Court. The identities of individual members of the proposed Class are readily ascertainable through BOA's account records.

58. Plaintiffs' claims are typical of the claims of the proposed Class, in that Plaintiffs, like all Class members, were forced into a high-premium flood insurance policy. Plaintiffs and all members of the Class suffered damages in the form of costs associated with the research, purchase, and maintenance of these high-premium policies.

59. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained experienced counsel with the necessary expertise and resources to prosecute a nationwide consumer class action. Plaintiffs and their counsel do not foresee any circumstances where the interests of Plaintiffs would be adverse to those of the Class.

60. Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting solely individual members of the Class. Questions of law and fact common to the Class include, without limitation:

    a.    whether BOA has a policy and practice of misrepresenting to its customers that federal law requires additional flood insurance on mortgages for which such additional flood insurance is not required by law;

b.  whether BOA's standard flood insurance letters are false, misleading and/or deceptive;

c.  Whether BOA uses unreliable information to make its decisions regarding flood insurance.

d.  whether BOA breached its mortgage agreements with customers by demanding and force-placing unauthorized amounts of flood insurance or amounts that were not provided for in the mortgage agreements;

e.  whether BOA's agreements comply with all mandated consumer disclosures under TILA;

f.  whether BOA's agreements are void in their entirety under TILA; and

g.  the proper measure of damages.

61. All members of the Class have suffered damages as a result of a "common wrong" on the part of BOA. Damages are easily ascertainable by reference to BOA's records concerning the members of the Class.

62. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. It would be economically impractical for Plaintiffs and members of the Class to pursue individual actions against BOA as the costs of prosecution would likely surpass their individual damages. BOA continues to engage in the unlawful, unfair and unconscionable conduct that is the subject of this Complaint. Class treatment of Plaintiffs' claims will permit Plaintiffs and the Class to vindicate their

rights against BOA and conserve the resources of the Court and the Parties. Class treatment would also avoid the possibility of inconsistent outcomes that could result from a multitude of individual actions in varying jurisdictions nationwide.

## CAUSES OF ACTION

### Count I: Unjust Enrichment

63. Plaintiffs reinstate and incorporate the paragraphs of the Complaint outside of this cause of action.

64. BOA received from Plaintiffs and members of the proposed Class benefits in the form of overcharges for force-placed insurance policies which are excessive and unreasonable and are the result of overcharging and overreaching. BOA and its affiliates receive a commission or other compensation in obtaining these policies.

65. BOAs will be unjustly enriched if it is allowed to retain the benefit, and each Class member is entitled to and demands an award against BOA for the amount that it enriched BOA and for which BOA was unjustly enriched.

### Count II: Violation of TILA, 15 U.S.C. § 1601, *et seq.*

66. Plaintiffs reinstate and incorporate the paragraphs of the Complaint outside of this cause of action.

67. Congress' objective in passing TILA was to ensure that the true cost of goods and services be fully and completely disclosed to the consumer in writing prior to the consumer's purchase and agreement to those terms.

68. Residential mortgage loan agreements and line of credit agreements are subject to the disclosure requirements of TILA and all related regulations, commentary and interpretive guidance promulgated by the Federal Reserve Board.

69. BOA is a "creditor" as defined by TILA.

70. As a creditor, TILA requires BOA to timely disclose all finance charges, other charges and third-party charges that may be imposed in connection with a mortgage loan or line of credit.

71. TILA requires BOA to make these disclosures clearly and conspicuously.

72. TILA requires BOA to accurately and fully disclose the terms of the legal obligation between the parties.

73. BOA violated TILA by, inter alia: (i) adversely changing the terms of mortgage loans or credit lines after origination without consent and demanding more insurance than previously required in amounts greater than necessary to protect their interest in the property; and (ii) failing to provide proper notice, after origination, that BOA was amending the terms of loans or credit lines as described in the relevant mortgage documents.

74. The TILA violations set forth above occurred within one year of the commencement of this action. To the extent the violations described above occurred earlier, Plaintiffs did not discover and did not have a reasonable opportunity to discover BOA's violations until less than one year before this action commenced. Prior to this

17

time, Plaintiffs had no reason or opportunity to complain about BOA's TILA violations because it was not yet apparent that BOA's disclosures were incomplete, inaccurate and misleading. Plaintiffs' TILA claim is timely. The statute of limitations on Plaintiffs' TILA claim did not begin to run until they received the first letter from BOA on June 25, 2019.

## COUNT III: Violation of RESPA, 12 U.S.C. § 2601, et seq.

75. Plaintiffs allege and incorporate the paragraphs of the Complaint outside of this cause of action.

76. Plaintiffs' mortgage loan is a federally regulated mortgage loan subject to the requirements of RESPA.

77. RESPA prohibits the giving or accepting of any fees, kickbacks or things of value pursuant to any agreement or understanding, oral or otherwise, in connection with business incident to a part of a real estate settlement service involving a federally regulated mortgage loan.

78. RESPA prohibits the giving or accepting of any portion, split, or percentage of any charge made or received for the rendering of real estate settlement services in connection with a transaction involving a federally regulated mortgage loan other than for services actually performed.

79. Regulations under RESPA define settlement services to include the provision of services involving flood insurance.

80. BOA has violated RESPA by giving or receiving fees, kickbacks and/or other things of value in connection with obtaining force-placed insurance from BOA's formerly wholly owned subsidiary Balboa and/or other affiliated companies.

81. BOA has unlawfully accepted portions, splits or percentages of premiums charged for force-placed insurance, without performing actual services.

82. As a result of BOA's RESPA violations, Plaintiffs and the Class are entitled to statutory damages equal to treble the amount of costs they incurred as a result of BOA's force-placement of flood insurance.

83. Plaintiffs and the Class are also entitled to declaratory and injunctive relief forbidding BOA from engaging in further RESPA violations.

84. Plaintiffs and the Class are entitled to recover their costs and attorney's fees.

85. Plaintiffs' claim is timely, as this action was filed within one year from the date on which Defendants charged Plaintiff for force-placed insurance.

## Count IV: Breach of Contract and Implied Covenant of Good Faith and Fair Dealing

86. Plaintiffs reinstate and incorporate the paragraphs of the Complaint outside of this cause of action.

87. The original mortgage contract between Plaintiffs and BOA did not require Plaintiffs to maintain flood insurance on their property as a condition of the contract.

88. BOA breached this contract by requiring Plaintiffs to purchase excessive flood insurance on their property when it did not actually need to be insured.

89. BOA's actions constitute a breach of its duty of good faith and fair dealing in that, to the extent that BOA had any discretion under the contract, it exercised that authority in bad faith by imposing unnecessary insurance on Plaintiffs' mortgage. As a result, BOA wrongfully withdrew money from Plaintiffs' mortgage escrow account and forced them to make this wrongfully increased payment with the implicit threat of negative credit reporting, thereby impeding their ability to continue meeting their obligations according to the terms of the contract.

90. Plaintiffs have suffered both financial harm and emotional stress as a result of BOA's unlawful practices. The threats BOA makes to Plaintiffs cause them emotional distress as they are unsure what they need to do to keep their home. BOA does this intentionally without regard for the effect it may have on the homeowners.

## Count V: Breach of Fiduciary Duty

91. Plaintiffs reinstate and incorporate the preceding paragraphs of the Complaint.

92. BOA holds funds in escrow for Plaintiffs and the Class. These funds are to be used for the purpose of *inter alia* paying taxes and/or insurance premiums when due, and any excess funds are to be returned to the Class under the terms of the Mortgages.

93. For Plaintiffs and much of the class, BOA established an escrow account specifically for the purpose of force-placing flood insurance. BOA has accepted or taken monies from Plaintiffs and the Class for insurance premiums and/or taxes and have held them in escrow.

94. BOA was obligated to hold these escrow funds in trust and owed Plaintiffs and the Class a fiduciary duty with respect to the handling of such funds.

95. BOA breached its fiduciary duty to Plaintiffs and members of the Class by: (i) unilaterally using escrow funds to purchase force-placed flood insurance that class members did not want and were not required to obtain, and (ii) profiting from force-placed flood insurance policies that were purchased from escrow funds at the expense of class members.

96. These actions were undertaken by BOA in bad faith for its own benefit and were not intended to benefit borrowers.

97. As a direct result of BOA's actions and subversion of the borrowers' interest to its own interest, Plaintiffs and the Class have suffered injury in the form of unnecessary and excessive escrow charges and a loss of funds from their escrow accounts.

98. The Class is entitled to damages for BOA's beach of their fiduciary obligations and misappropriation of escrow funds. In addition, Plaintiffs and the Class are

entitled to punitive damages because BOA acted in bad faith in deliberate and/or reckless disregard of their rights and its obligation to hold their escrow funds in trust.

## Count VI: Conversion

99. Plaintiffs restate and incorporate the paragraphs of the Complaint outside of this cause of action.

100. BOA had and continue to have a duty to maintain and preserve its customers' mortgage accounts and mortgage escrow accounts, and to prevent their diminishment or alteration through their own wrongful acts.

101. BOA wrongfully and intentionally collected insurance premiums from its customers' mortgage escrow accounts.

102. BOA collected these premiums by wrongfully and intentionally taking specific and readily identifiable funds from its mortgage customers' escrow accounts.

103. BOA has assumed and exercised the right of ownership over these funds without authorization to do so and in hostility to the rights of the Class without legal justification.

104. BOA retains these funds unlawfully without consent of the members of the Class and deprive them from exercising control over the funds.

105. BOA intends to permanently deprive Plaintiffs and the Class of these funds, although Plaintiffs and the class properly own them. Plaintiffs and the Class are entitled to the immediate possession of these funds.

106. BOA's wrongful conduct is of a continuing nature. In fact, BOA has previously been enjoined from engaging in this very conduct. See Settlement, Exhibit 1. The settlement in the 2014 *Hall* case barred BOA from engaging in the type of improper conduct described herein for five years following the settlement.

107. If at any point BOA did cease to engage in this wrongful conduct, it has started again with Plaintiffs and the Class.

108. As a direct and proximate result of BOA's wrongful conversion, the Class has suffered and continues to suffer actual damages. The Class is entitled to recover from BOA all damages and costs permitted by law, including all amounts that BOA has wrongfully converted, which are specific and readily identifiable.

### Count VII: Violation of 36 Okla. Stat. §§ 1203 and 1204

109. Plaintiffs restate and incorporate the paragraphs of the Complaint outside of this cause of action.

110. Entities in the business of insurance are prohibited from making any representation or statement relating to insurance which is untrue, deceptive, or misleading.

111. BOA has violated this prohibition by requiring Plaintiffs and the Class to purchase unnecessary flood insurance by falsely asserting that their property is in a SFHA as well as by using unreliable information to arrive at its determinations.

112. As a result of this violation Plaintiffs and the Class have suffered and continue to suffer monetary damages.

## PRAYER FOR RELIEF FOR ALL PLAINTIFFS AND CLASS MEMBERS

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Classes, pray for relief as follows:

A.    That this action may proceed as a class action under Fed. R. Civ. P. 23(b)(2) and (3), that Plaintiffs be appointed as the representative for the proposed Classes, and that Plaintiffs' counsel be appointed as counsel for the proposed Classes;

B.    That Plaintiffs and the proposed Classes recover the damages determined to have been sustained by them, trebled as provided by law, with any applicable civil penalties, statutory damages and punitive damages, and that judgment be entered against Defendants on behalf of Plaintiffs and each member of the Classes;

C.    That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents and employees and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from continuing and maintaining its unlawful conduct alleged in this Complaint;

D.     That Plaintiffs and members of the proposed Classes be awarded prejudgment and post-judgment interest, and that such interest be awarded at the highest legal rate from and after the date of service of the Complaint in this action;

E.     That Plaintiffs and the proposed Classes recover their costs of this suit, including attorneys' fees and costs, as provided by law; and

F.     That the Court direct all such further relief that it deems just and appropriate.

## DEMAND FOR TRIAL BY JURY

113. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs and Class Members demand a trial by jury on all questions of fact raised by the Compliant.

*/s/ Edward L. White*

Edward L. White, OBA #16549
Kerry D. Green, OBA #31998
Edward L. White P.C.
829 East 33rd Street
Edmond, Oklahoma 73013
Telephone: (405) 810-8188
Facsimile: (405) 608-0971
ed@edwhitelaw.com
kerry@edwhitelaw.com

**ATTORNEY LIEN CLAIMED**